P. E. MAYHEW V. FRED MCFARLAND.

No. 7674. Decided June 18, 1941.
Rehearing overruled July 23, 1941.
(153 S. W., 2d Series, 428.)

*Smith & Smith,* of Anson, for appellants.

On the proposition that the plea of privilege should have been sustained and that the relationship that existed between appellant and appellee was only that of master and servant. McCombs v. Stewart, 117 S. W. (2d) 869; Smith Bros. v. O'Brian, 94 S. W. (2d) 145; Cunningham v. International Ry. Co. 51 Texas 503; Austin Fireproof Warehouse Transfer Co. v. Faltison, 144 S. W. (2d) 905.

*McCall & McCall,* of Weatherford, for appellee.

The appellant, Mayhew, being the operator of truck for hire with a certificate to that effect from the Railroad Commission, and having accepted the load in question for transportation from Parker County to Hale County, over the highways of the State, was a common carrier doing business in Parker County, and venue for a suit for damages to freight was properly in Parker County. Chevallier v. Straham, 2 Texas 115; Texas & Pac. Ry. Co. v. Fenwick, 78 S. W. 548; 8 Tex. Jur. 34, 37.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case is here on certified questions from the Court of Civil Appeals at Fort Worth. The controlling facts are as follows:

Fred McFarland, residing in Parker County, filed suit in the

District Court of Parker County against P. E. Mayhew, alleged to be a resident citizen of Jones County, to recover damages done to a 16-foot combine harvester while Mayhew was engaged in transporting the same from McFarland's ranch in Parker County to his farm in Hale County. According to allegations in McFarland's original petition, Mayhew operated a truck, and was engaged in the business of carrying goods therein as a common carrier for hire from Parker County to other counties, including Hale County, in the State of Texas, and on the 21st day of June, 1930, in consideration of a reasonable and lawful compensation agreed to be paid to Mayhew by McFarland, the said Mayhew contracted and undertook to transport said combine harvested from McFarland's ranch in Parker County and deliver same to his farm in Hale County.

It is further alleged that Mayhew, after undertaking to so transport the machine, failed to safely transport and deliver it to McFarland's farm in Hale County, but while it was in his possession near Wichita Falls, Texas, he damaged and injured said machine, and left and abandoned it on a lot in Wichita Falls, where McFarland later secured it. It was alleged that the machine was in good order and condition and of the reasonable value of $1200.00 when delivered to Mayhew and McFarland sought recovery of $1100.00 for damages to the machine and also for $50.00 for expense in carrying it back to his ranch in Parker County, and for $150.00 for rental of another machine and other incidental expenses.

Mayhew filed his plea of privilege to be sued in Jones County, the place of his residence, and said plea of privilege contained the statutory requirements. McFarland filed a controverting affidavit to the plea of privilege filed by Mayhew. The trial court heard testimony on the plea of privilege. McFarland testified to the employment of Mayhew to transport the machine; that he delivered it to him at his ranch in Parker County; that Mayhew abandoned it in Wichita Falls in an injured and damaged conditioned; that he recovered it later; and he also testified as to its value at the time its transportation was undertaken by Mayhew, and its value after damage and abandonment.

McFarland further testified that before his employment of Mayhew he had been told by Mr. Jordan, whom he had solicited to haul the machine, that it would be necessary to obtain from the State Highway Department a permit for that purpose, on account of the spread or width of the combine,

and that whoever was to transport it would have to sign the application therefor in his own name, and no one else could sign for him. He then called Mayhew at Weatherford from Fort Worth over the telephone, and told him that he would have to come over to Fort Worth and himself get the permit from the Highway Department in that city. In response to that conversation, Mayhew came to Fort Worth, and upon his own application obtained the permit from the Highway Department of the State, and it is alleged that he then and there entered into the contract with McFarland to transport the combine from Parker County to Hale County.

While on the witness stand, McFarland testified with reference to the permit. He stated that it was an overload permit; that when you go above the 7000 pound limit you have to obtain a special permit to carry it. The permit in question allowed Mayhew to load the machine in Parker County, and the route was definitely stated and set out over which he should go from Weatherford. The route specified was from Weatherford to Mineral Wells, Jacksboro, Wichita Falls, Vernon, Plainview, Hale Center, and to his farm in Hale County. The permit called for Mayhew to load the combine at McFarland's ranch in Parker County and then to follow the route to McFarland's farm near Hale Center.

At this point counsel for Mayhew objected to the testimony of the witness McFarland as to the contents of the permit; and the objection was sustained by the court. According to the further testimony of McFarland, the permit was delivered to Mayhew, to whom it was issued, and he supposed that Mayhew still had it. Mayhew did not offer such permit in evidence or tender it to McFarland.

On cross examination by counsel for Mayhew, McFarland further testified that the permit called for some 13,000 or 14,000 pounds. They got a little extra weight in accordance with the law. He testified that he thought the factory weight of the combine was 11,500 pounds, and that the width of the machine when loaded on the truck was about fourteen or fifteen feet. McFarland also testified that in his discussion with Mayhew he, Mayhew, told him he had a permit issued by the Railroad Commission to carry freight any and everywhere, and was covered by insurance to carry freight; that he was also a licensed carrier, and that he had a right as a common carrier to transport the combine. He testified that he wanted to

ascertain these facts from Mayhew before he made a contract with him to haul the combine; that later Mayhew called him over the telephone, and stated that he had hit the abutment of a bridge near Wichita Falls, and had injured the combine, and he also stated that he wanted to unload the machine at Wichita Falls. McFarland insisted on his delivering it to his farm in Hale County, as he had contracted to do. Mayhew said that the insurance company instructed him to leave it at Wichita Falls. McFarland also testified that he found his machine on a lot in Wichita Falls, and that it was badly damaged; that it was practically a total loss.

McFarland also introduced in evidence "Common Carrier Motor Carrier's Permanent Certificate of Convenience and Necessity," issued by the Railroad Commission of Texas, dated March 4, 1937, "authorizing the operation of a common carrier motor carrier," under the provisions of Article 911b, sections 2, 3, and 5, of Vernon's Anno. Civil Statutes of Texas. He also introduced in evidence a certificate by the Railroad Commission, dated September 21, 1937, of identification of the motor truck he was authorized to operate. In both those instruments, however, the permit given to Mayhew was for "transporting road machinery from merchant to contractor at place of use and to nearest repair shop, and vice versa, and from job to job; box and street cars from storage to purchasers locations," over certain designated routes.

Wayne Ellis testified for McFarland that he lived in Weatherford, Parker County, and was engaged in the business of hauling goods for hire, and that on one occasion during the year 1932 or 1933 Mayhew hauled some cattle for hire from Lonnie Farmer's ranch in Parker County to Fort Worth; that the witness Ellis understood at the time that Mayhew was a licensed carrier.

Waldon Jordan, another witness, testified that McFarland first engaged him to haul the combine to Hale County, but a trade was made with Mayhew to undertake the hauling; that Mayhew stated then that he had a permit from the Railroad Commission to haul freight; that in January or February, 1937, the same witness saw Mayhew with his truck loaded with freight, hauling it into and through Weatherford, and that he saw Mayhew hauling freight in Parker County twice.

Mayhew introduced no evidence. At the conclusion of the

evidence the trial court overruled Mayhew's plea of privilege. An appeal was taken by him from the judgment of the trial court to the Court of Civil Appeals at Fort Worth.

The Court of Civil Appeals in its original opinion held that the testimony introduced by McFarland on the plea of privilege was insufficient prima facie to prove that Mayhew was engaged in the business of a common carrier of goods under the law. The Court of Civil Appeals also held that, if mistaken in that conclusion, it was also of the opinion that the evidence was insufficient to establish venue in Parker County under the provisions of Exception 24 of Article 1995 of the Revised Civil Statutes of Texas.

On motion for rehearing the Court of Civil Appeals expressed doubt as to the correctness of its holding on the plea of privilege; and it also expressed the opinion that the evidence was insufficient to show that Mayhew was doing business in Parker County, where the suit was brought, within the meaning of Section 24 of Article 1995 of the Revised Civil Statutes. In view of the importance of the question, the Court of Civil Appeals has certified the following questions to this Court:

"1. Was the evidence sufficient prima facie to show that at the time defendant contracted to haul the combine in question for plaintiff, he was a common carrier within the meaning of Exception No. 24, Art. 1995, Rev. Civ. Statutes?

"2. Was it sufficient prima facie to show that defendant was doing business in Parker County, where the suit was instituted, within the meaning of the same statutory exception?"

Both questions involved the construction of Exception No. 24 of Article 1995 of the Revised Civil Statutes of Texas. The pertinent part of that Article reads as follows:

"Art. 1995. No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:

\* \* \* \* \*

"24. Carriers.—Suits arising from damage or loss to any passenger, freight, baggage or other property, by reason of its transportation, or contact in relation thereto, in whole or in part by one or more common carriers or the assignees, lessees, trustees or receivers thereof, operating or doing business as such in this State, or having agents or representatives in this

State, may be brought against one or more of those so doing business, in any county where either does business or has an agent or representative."

The testimony in this case clearly shows that Mayhew was a common carrier under the rule announced by the courts of this State. The testimony also shows that he held himself out as a common carrier, and that he held a certificate from the Railroad Commission, dated March 4, 1937, "authorizing the operation of a common carrier motor carrier," as provided for under the provisions of Article 911b, Sections 2, 3, and 5, of the Revised Civil Statutes.

1   The rule has long prevailed in this State that all persons who transport goods from place to place for hire, for such persons as see fit to employ them, whether usually or occasionally, whether as a principal or incidental occupation, are common carriers, and incur all their responsibilities. Chevallier v. Straham, 2 Texas 115, 47 Amer. Dec. 639; Haynie v. Baylor, 18 Texas 498; Hahl v. Laux, 93 S. W. 1080; 8 Tex. Jur., p. 34.

Mayhew held himself out as a common carrier, and the fact that he was compelled to obtain from the Highway Department a special permit to haul this machine over the highways of the State, on account of its unusual size, did not change his responsibilities as a common carrier. Sec. 13 C. J. S., p. 32, sec. 5, p. 39, sec. 8, and the decisions cited in the footnotes.

2   The testimony shows that Mayhew had hauled freight in his truck in Parker County at least three different times. This testimony prima facie shows that he was "doing business" as defined in Exception 24, supra, and, therefore, that he was subject to the jurisdiction of the courts of Parker County. The Legislature has not undertaken to define what constitutes "doing business" in Texas, and we are therefore compelled to accept the general definition of that term. In The Restatement of the Law, Conflict of Laws, page 24, section 167a, it is said:

"What constitutes 'doing business.' Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."

We answer questions Nos. 1 and 2 "Yes."

Opinion delivered June 18, 1941.

ON MOTION FOR REHEARING.

Counsel for Mayhew, in a motion for rehearing, contend, among other things, that this Court erred in holding, in answer to Certified Question No. 2, that the evidence was sufficient, prima facie, to show that Mayhew was doing business in Parker County at the time he contracted to haul the combine for McFarland, within Exception No. 24, Article 1995, Revised Civil Statutes of 1925. This contention is based on the ground that there was no testimony in the record on the question as to whether Mayhew was doing business in Parker County on September 16, 1938, the date this suit was originally filed in that county, and that any testimony on the question of whether Mayhew was doing business in Parker County prior to that date is immaterial.

It will be noted that Exception No. 24 refers to suits arising from damages or loss to any property, etc., by reason of its transportation by one or more common carriers in this State. It is provided that such suits may be brought where a common carrier either does business or has an agent. If connecting carriers are involved, the suit may be brought against any one or more of them, in any county where either does business or has an agent. It will also be noted that the statute fails to directly define whether the venue will depend upon the carrier's status of doing business or having an agent at the time a contract of transportation is made, or whether it will depend upon such status at the time a suit is filed. The statute uses the present tense and therefore, in our opinion, refers to the status of the defendant as of the time the suit is filed and not as of the time of the transportation of the freight or other commodity, or of the making of the contract therefor.

However, upon proof of the status of the defendant as a common carrier in such county as it existed at the time of the making of the contract of transportation, there would arise a presumption of the continued existence of such status for a reasonable time in the absence of evidence to the contrary. 17 Tex. Jur. 255; Northern Texas Traction Co. v. Smith, 225 S. W. 1013, par. 13; 20 Amer. Jur. 205. Corpus Juris announces the rule as follows:

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time." 22 C. J. 86.

Such a presumption has been employed to establish the continued existence of a corporation, of the relation of principal and agent, and of a particular occupation or business, and the like. Id. 87. No evidence to the contrary was offered by the defendant, and consequently proof that he was doing business as a common carrier in the county in question only a short time prior to the filing of the suit was sufficient to raise a prima facie presumption of his doing business as a common carrier in said county at the time the suit was filed.

We have carefully considered the questions presented in the motion for rehearing, and said motion is hereby overruled.

Opinion delivered July 23, 1941.

(The opinion of the Court of Civil Appeals, in compliance with this opinion of the Supreme Court, appears in 154 S. W. (2d) 214.—Ed.)