### ROGERS v. CRESPI & CO.
### No. 3104.

Court of Civil Appeals of Texas. Waco.
June 18, 1953.

Julius C. Jacobs and Robert C. Jackson, Jr., Corsicana, for appellant.

C. M. Smithdeal, Milford, for appellee.

HALE, Justice.

Appellee sued appellant as a common carrier for hire to recover the value of fifty bales of cotton which were destroyed by fire on August 1, 1951 while being transported on a motor-propelled truck from Raymondville to Bonham, Texas. The case was tried before a jury. Upon the conclusion of the evidence appellee duly presented its motion for a peremptory instruction. After overruling appellee's motion, the court submitted certain special issues to the jury. In answer to the issues submitted the jury found in effect that (1) the parties agreed that if appellant would haul the cotton appellee would exempt him "from any and all liability resulting from loss in the transportation of the cotton" and that (2) the difference between the value of the cotton immediately before and after its damage by fire was $7,965.33. Thereupon, appellee filed its motion for judgment in its favor non obstante veredicto for the sum of $7,965.33 upon the grounds, among others, that the answer of the jury to special issue No. 1 was without any support in the evidence and was immaterial because the undisputed evidence showed the cotton was delivered to appellant as a common carrier and under the provisions of Art. 883 of Vernon's Tex. Civ.Stats. the agreement found by the jury was invalid and hence such finding should be ignored. After proper notice and hear-

ing, the court sustained the motion of appellee for judgment in its favor non obstante veredicto and rendered judgment accordingly.

Appellant predicates his appeal upon three points of error. By the first point in his brief he says the court erred in rendering judgment against him notwithstanding the verdict because the evidence showed he was a private contract carrier and not a common carrier of the cotton and was therefore permitted under the law to contract with appellee for exemption from liability for the loss of which complaint is here made.

■ Art. 883 of Vernon's Tex.Civ.Stats. provides that common carriers for hire within this State shall not limit or restrict in any manner whatsoever their liability as it exists at common law and that no agreement made in contravention thereof shall be valid. At common law there is an implied agreement on the part of common carriers for hire to carry safely the goods entrusted to them for transportation and they are held to a very strict accountability for loss of or failure to deliver goods received by them for carriage, being generally liable as an insurer for all losses and injuries except such as arise from an act of God or of the public enemy, from the negligence of the shipper, or from the inherent nature or vice of the property shipped. 8 Tex.Jur., p. 217, § 140 and authorities; 13 C.J.S., Carriers, § 71, p. 131, and authorities; 9 Am.Jur., p. 813, §.661 and authorities.

■ Art. 911b, Sec. 1(h) of Vernon's Tex.Civ.Stats., defines the term "contract carrier" to mean any motor carrier transporting property for compensation or hire over any highway of this State other than as a common carrier. In the case of Mayhew v. McFarland, 137 Tex. 391, 153 S.W. 2d 428, 431, the Supreme Court of Texas said: "The rule has long prevailed in this State that all persons who transport goods from place to place for hire, for such persons as see fit to employ them, whether usually or occasionally, whether as a principal or incidental occupation, are common carriers, and incur all their responsibilities. Chevallier v. Straham, 2 Tex. 115, 47 Am.Dec. 639; Haynie v. Baylor, 18 Tex. 498; Hahl v. Laux, 42 Tex.Civ.App. 182, 93 S.W. 1080; 8 Tex.Jur. p. 34.''

On the trial of this case appellant testified in substance that he had been hauling cotton over the highways of this State from place to place for such persons as saw fit to employ him for approximately 15 years and thereby making a living for himself and his family.

"Q. You have always hauled for anybody that has called on you to haul? A. That's right, to make a living. * * *

"Q. You don't turn down anybody do you? A. No, I don't because I make a living for my wife and baby.

"Q. You haul cotton for anybody that needs it? A. Anybody that calls me I haul it.

"Q. And you have been doing that for several years? A. Fifteen years, yes sir."

He also testified that he had never secured a permit from the Railroad Commission of Texas to haul cotton because it was easier and less expensive for him to pay an occasional fine for the illegal operation of his trucks than it was to comply with the legal prerequisites to the issuance of such permit. We find no pleading or evidence which shows or tends to show that appellee or any of its responsible agents knew, or should have known, that appellant did not have a permit to haul cotton over the highways of this State.

■ In our opinion, the testimony of appellant shows without any dispute that he was in legal contemplation a common carrier, as distinguished from a contract carrier, at the time when this cargo of cotton was delivered to him for transportation. 8 Tex.Jur. p. 34, § 2; 13 C.J.S., Carriers, § 3, p. 25; 9 Amer.Jur. p. 430, § 4; Chevallier v. Straham, 2 Tex. 115; Burnett v. Riter, Tex.Civ.App., 276 S.W. 347, pts. 1–4. Having held himself out to the public generally for a period of fifteen years as being able, ready and willing to haul cotton from place to place for such persons indiscriminately as saw fit to employ his services in that capacity, we do not think he can now be heard to say he was not a

common carrier in the transaction here complained of solely because he did not have a permit under the provisions of Art. 911b of Vernon's Tex.Civ.Stats. to operate a truck in the business of hauling cotton over the highways of Texas. Mayhew v. McFarland, 137 Tex. 391, 153 S.W.2d 428. Since he was a common carrier, the finding of the jury to the effect that appellee agreed to exempt him from "any and all liability" was immaterial because such agreement was invalid under the terms of Art. 883 of Vernon's Tex.Civ.Stats., even though the finding of the jury with respect to such agreement was supported by some evidence. Therefore, we overrule appellant's first point of error.

By his second point appellant says the trial court erred in refusing to submit to the jury the following special issue requested by him: "From a preponderance of the evidence, do you find that the cotton in question was burned by a fire that originated from the inside of a bale of cotton?" He contends that such issue was raised by the pleadings and the evidence and that an affirmative answer to the same would have absolved him from negligence and liability for the loss complained of, even though he was a common carrier of the cotton at the time when the loss occurred. We cannot agree with these contentions.

Appellant went to trial on pleadings that amounted to nothing more than a general denial of the allegations in appellee's petition. During the progress of the trial appellant tendered Frank White as a witness in his behalf. The witness testified that he was chief of the volunteer fire department at Bremond and that he was called shortly before noon on August 1, 1951 to put out a cotton fire on a truck at a point about three miles south of Bremond. When he was asked by counsel for appellant whether from his experience as a fireman he was able to diagnose the cause of a cotton fire, such as he saw on this occasion, counsel for appellee objected and the Court sustained the objection on the ground that there was no pleading as to the cause of the fire. Thereupon, counsel for appellant stated in open court: "The contention is that at the Compress there is a spontane-

ous combustion that built up and burst out further down the road." The Court: "All right, because you are a young lawyer I'll let you amend your pleadings." Counsel for appellee: "Will you allow me to except to that, your honor?" The Court: "Yes I will. I'll allow you to except. You ought to except quite a bit. I'm dealing here with young lawyers who are inexperienced and I understand that spontaneous combustion is one of the causes (meaning one of the causes which exempt a common carrier of cotton from liability for loss by fire). You may proceed." Counsel for appellee: "We except, your honor."

The record discloses that counsel for appellant did not file any trial amendment to his pleadings until after the cause had been submitted to the jury and there is no showing that the Court or counsel for appellant was apprised as to what the contents thereof might be other than the verbal statement made by counsel for appellant in open court. In the trial amendment which was later filed, appellant alleged that the firing of the cotton "was caused by an inherent defect," that the cotton burned from the inside and not from the outside, and that "the cause of the said fire could only have started prior to the time it was picked up at the compress."

After the Court had granted permission for appellant to amend his pleadings, his counsel proceeded with the direct examination of the witness White as follows:

"Were you able to find out how the fire started? A. No.

"Q. From the way it burned or anything? A. No, of course it was just burned thoroughly, the whole load had burned more than any we had seen prior to that time.

"Q. Well, from the way the fire was burning could you tell the jury in your opinion how long the fire had been burning? A. It would have to have been burning a long time for all that cotton to be burned as thoroughly inside. It apparently had been burning inside. You can put one tank of water on it and it will burn up if it is burned inside, but I couldn't say how long it had been burning.

"Q. Did it look like it had burned from the inside out instead of the outside in? A. It looked like it was from the inside, sir."

He further testified that from what he had read about cotton fires he "would think it would be possible to start a fire by compressing anything tight such as cotton."

On cross examination he stated that he was not a cotton man, that his experience with cotton had been limited and that he didn't know much about it.

"Q. And when you saw this cotton it was all on fire, wasn't it? A. It sure was.

"Q. And burning pretty hard? A. That's right.

"Q. From the outside and in? A. Everywhere."

J. T. Arnett, who was driving the truck at the time of the fire, testified that the cotton was loaded on the truck at the compress in Raymondville about noon on July 31, 1951 and after eating his lunch he departed for Bonham; that he traveled most of the night but stopped along the road and slept some; that he did not discover any fire in his cargo until about eight or nine o'clock the next morning when his attention was called to the fire by a trucker whom he met on the highway about three miles south of Bremond; that when his attention was called to the fire he looked around and "the whole thing was a-blaze"; that he drove the truck off the highway, stopped it and began to unload the truck with the assistance of others who stopped to help him; and that, after the fire had been extinguished, he hauled the salvage back to Harlingen and turned it over to a pickery or salvage plant upon instructions from appellant.

In our opinion, the only affirmative defense appellant was authorized to raise by a trial amendment, if any, was his contention that the cause of the fire was "a spontaneous combustion" which was built up at the compress in Raymondville and "burst out further down the road." But that issue was not raised by the trial amendment which was actually filed or by the evidence adduced upon the trial and if such issue had been raised by the pleadings or the evidence there was no request of the court

for its submission to the jury. Furthermore, we do not think the evidence in the case, when viewed in the light most favorable to the contention of appellant, was competent or sufficient to form the basis for a legal inference that the cause of the fire was a "fire-packed" bale in the cargo, or that the cotton was burned by a fire that originated from the inside of any particular bale in the lot, or that the cause of the fire could have been only a cause which had its origin prior to the time the cotton was picked up at the compress.

We find no evidence, either direct or circumstantial, which shows or tends to show that any particular bale in the shipment was burned in any manner different from the manner in which the entire lot was burned. If there was, in fact, a "fire-packed" bale in the lot and if the entire shipment was burned by a fire that originated from the inside of any particular bale, then all of the cotton, other than the bale that might have been packed with fire inside, necessarily burned from the outside inward and not from the inside outward. We find no evidence as to what precautions appellant and his truck driver took, if any, to protect the cargo from the hazards of fire to which it might have been exposed while it was being transported or as to whether the negligence, if any, on their part in any respect did or did not cause or contribute to cause the fire. The only witness who was asked whether he knew what caused the fire or how it started was the witness White and he testified unequivocally that he was not able to find out how the fire started. Consequently, in so far as the evidence in the case is concerned, the cause of the fire and the manner in which it originated appears to be wholly unknown and any conclusion with respect thereto would necessarily be based upon conjecture and surmise only.

■ The third point in appellant's brief is as follows: "The trial court erred in refusing to enter judgment for defendant after he had offered competent evidence of the manner in which the shipment was hauled and showed that defendant did not do or fail to do that which might constitute

negligence, and plaintiff failed to come forward with any evidence of negligence on defendant's part." We overrule this point because we cannot say appellant showed, either by pleadings or evidence, that the manner in which he handled the shipment was such as to exculpate him and his truck driver from any charge of negligence, even though such showing on his part, if it had been made, might have constituted either a complete or a partial defense to the cause of action declared upon by appellee. Indeed, we do not think any defensive issue against liability for the recovery sought by appellee was raised by the evidence in this case, regardless of what the pleadings on behalf of appellant might have been.

Therefore, notwithstanding the verdict of the jury and the able arguments of counsel for appellant, the judgment appealed from must be and it is hereby affirmed.

TIREY, J., took no part in the consideration or disposition of this case.