**LOOP COLD STORAGE CO. and Frozen Food Express, Inc., Appellants,**

v.

**SOUTH TEXAS PACKERS, INC., Appellee.**

**No. 717.**

Court of Civil Appeals of Texas, Corpus Christi.

July 31, 1972.

Rehearing Denied Sept. 7, 1972.

Bradford F. Miller, San Antonio, for Loop Cold Storage Co.

Phinney, Hallman, Pulley & Livingstone, Jack L. Coke, Dallas, for Frozen Food Express, Inc.

Perkins, Davis, Oden & Warburton, L. H. Waburton, Jr., Clyde L. Wright, Alice, for appellee.

## OPINION

NYE, Chief Justice.

This is a venue case. The judgment of the trial court overruled the various pleas of privilege filed by the several defendants. South Texas Packers, Inc. (plaintiff) brought suit against Alford Refrigerated Warehouses, Inc. (hereafter called Alford) and Frozen Food Express, Inc. (hereafter called Express) in Nueces County for damages to a shipment of meat. Several months later plaintiff filed its first amended original petition in which plaintiff brought in Loop Cold Storage Company (hereafter called Loop) as an additional defendant along with Alford and Express. Each defendant, as well as plaintiff, has its principal place of business in a county outside of Nueces County. All three defendants timely filed their separate pleas of privilege. Plaintiff then filed its controverting affidavits to such pleas.

Alford and Loop are refrigerated warehouse operators which receive, refrigerate, freeze and store various food commodities. Express is an interstate motor common carrier. Express picked up a shipment of meat belonging to the plaintiff which was stored at Alford's and Loop's warehouses and delivered the same to Safeway Stores, Inc., in Little Rock, Arkansas. The meat was damaged when it arrived in Arkansas.

The plaintiff was in the meat packing business in which it processed fresh meat daily. It delivered the meat to warehouses located in Corpus Christi (Alford) and San Antonio (Loop). The particular meat in question that was delivered to Alford and Loop by the plaintiff, was fresh lean meat to be blast frozen and stored, awaiting orders by the plaintiff for shipment thereafter to respective buyers. Both Alford and Loop issued warehouse receipts accepting the meat for storage and freezing from the plaintiff.

On or about April 21, 1969, Safeway Stores, Inc., in Little Rock, Arkansas, ordered 600 pounds of frozen boneless beef from the plaintiff at 55½¢ per pound. The terms of the sale were that the meat was to be delivered to Safeway at Little Rock, prepaid express; that the meat was to arrive at zero degrees fahrenheit or less; and that title to the meat was to pass from the shipper (plaintiff) to buyer (Safeway) at the destination upon inspection and acceptance by Safeway. Prior to the 21st day of April plaintiff called Express instructing them to pick up 472 boxes of meat (weighing 600 pounds each) from Alford in Corpus Christi, and 128 boxes of meat (same weight) from Loop in San Antonio, and deliver the same to Safeway in Little Rock, Arkansas.

On the morning of April 21 Express loaded and departed Corpus Christi at 7:30 a. m. with 472 boxes of meat. It arrived in San Antonio at 10:30 a. m. and picked

up 128 additional boxes from Loop. It departed San Antonio at 1:00 p. m. on April 21. It arrived in Little Rock, Arkansas at approximately 10:30 a. m. on April 22. The meat was placed in Safeway Store cold storage, inspected by random samples by Safeway, and rejected. Safeway immediately notified plaintiff that it had rejected the total shipment. The plaintiff then called and made arrangements for a Government inspection of the meat. Between 2:30 and 3:00 p. m. on the same day, it was determined by the Government inspector that 102 of the 600 boxes of meat, were unfit. This was approximately 32 hours after Express had left Corpus Christi. The plaintiff contacted another buyer in Little Rock who purchased the remaining meat at a resulting loss of approximately $5,000.00.

▊▊ In a venue case it is the duty of the Court of Civil Appeals to presume that all facts and fact inferences having support in the evidence were found in favor of the judgment by the trial court. Since there were no specific findings of fact or conclusions of law filed, it is our duty to consider only the evidence which tends to support the judgment indulging every reasonable conclusion favorable to it, thereby disregarding all evidence to the contrary. We cannot set aside the judgment of the trial court if there is any evidence of a probative nature to support it. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951) and the many cases cited in Texas Digest, Vol. 4A, Appeal & Error, ▊▊▊▊

The testimony showed that the procedure for testing the meat at its destination involved taking 100 boxes at random out of the 600 shipped. From the 100 boxes, 25 were opened and tested with a meat trier for resistance. The balance were tested through the carton. The evidence was that if the meat was solidly frozen, the meat trier would not penetrate the meat. If the meat was somewhat frozen or partially frozen, it would penetrate with resistance. If the meat was in a further state of thaw, it would naturally penetrate more easily.

Of the 100 boxes initially tested, 50% were thawed slightly, 10% were very soft, 5% were very soft with a foreign fishy odor. 35% were properly frozen. There was some evidence by the inspector that it would take a 60 pound box of frozen boneless meat about three days to thaw if it was subjected to normal room temperature of 75 degrees. It was his opinion, that possibly the reason that the meat was in a thawed condition when it arrived in Little Rock, was that the meat had not received adequate time to become solidly frozen at the outset. Other evidence showed that Alford froze and stored seafood in its warehouse. Circumstantially, at least, this could account for some of the meat having a foreign fishy odor. However, there was no evidence to distinguish the particular damaged meat as coming from either Alford or Loop. The plaintiff sought damages from the defendants Alford, Loop and Express jointly in the amount of $5,237.52, plus interest and attorney's fees.

The plaintiff contends that subdivisions 9a, 23, 24 and 29a of Art. 1995, V.A.C.S. are applicable to the venue questions presented on this appeal. It is undisputed that defendants Alford, Loop and Express are corporations. Defendant Alford did not appeal from the trial court's order overruling its plea of privilege. Therefore, venue as to Alford is established in Nueces County. The proof was, however, that plaintiff has a cause of action against Alford in Nueces County. It showed that Alford had a refrigerated warehouse in Nueces County; that it accepted fresh meat from plaintiff; it issued its warehouse receipt to plaintiff showing that the meat delivered by the plaintiff to Alford was blast frozen; that such meat was subsequently delivered in Nueces County to Express; that a bill of lading was issued by Alford releasing the meat to Express; and that such meat was ultimately delivered by Express at its destination in a damaged condition. The evidence shows that at all times after plaintiff delivered the 472 boxes of meat to Alford in Nueces

County, it was in the exclusive control of Alford and Express.

In a case factually similar to the situation before us, the Amarillo Court in an opinion by the then Chief Justice Denton stated that:

". . . A bailor makes out a prima facie case of negligence against a bailee by proving the bailment and that the property was delivered to the bailee in good condition and that it was damaged while in the possession of the bailee or not returned at all . . ."

Zable v. Huff, 432 S.W.2d 717 (Tex.Civ. App.—Amarillo, 1968).

■■ Where the property is lost or injured while in the exclusive custody of the bailee, his servant or agent, it is incumbent upon the bailee to prove that the loss or injury was not occasioned by the negligence of himself, or his servants or agents. Hislop v. Ordner, 28 Tex.Civ.App. 540, 67 S.W. 337 (1902). The burden rests with the bailee to show that the damage resulted without fault or negligence on his part. Absence of such proof to the contrary, the presumption of negligence prevails. City of Dallas v. Milum, 200 S.W.2d 833 (Tex. Civ.App.—Dallas 1947, wr. ref. n. r. e.).

■ A shipper of goods by common carrier makes out a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at the place of origin and was delivered in a damaged condition by the carrier at its destination. Here Alford testified that the meat delivered to Express was random tested by a thermometer and that the meat tested was 0 degrees or below when delivered to Express at the instance of the plaintiff. There are four excepted perils in such a situation available as a defense to a common carrier: (1) an act of God; (2) the public enemy; (3) the fault of the shipper; or (4) the inherent nature of the goods themselves. Missouri

Pacific Railroad Co. v. Elmore & Stahl, 368 S.W.2d 99 (Tex.Sup.1963); Express made no attempt to introduce any evidence as to any of the excepted defenses.[1] Chesapeake & Ohio Ry. Co. v. A. F. Thompson Mfg., Co., 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659 (1926). The Court in the Thompson case said that the so-called presumption of negligence is not a presumption at all but is a rule of substantive law under which the carrier is liable for failure to transport safely unless a loss or damage is due to one of the specified causes.

■■ In order to maintain a suit in a county other than that in which the corporation's principal place of business is located, it is only necessary that some part of either the primary right or the breach thereof occurred in the county where the suit was filed and the requirement that a part thereof shall have arisen where the suit was brought is met by proof that a contract was made in that county. Sani-Serv. Freezer Sales, Inc. v. D. R. Coker, 441 S.W.2d 649 (Tex.Civ.App.—Tyler 1969). Unquestionably a part of the cause of action against Express arose in Nueces County since delivery of the meat in question was made to Express in that County. The contract provisions accepted by Express in Nueces County, in the issued bill of lading provided that 472 pounds of frozen meat were to be maintained at 0 degrees or lower at all times while under shipment. The meat was accepted by Express and delivered in Little Rock, Arkansas in a damaged condition at a temperature higher than that which Express had agreed to maintain the meat. Venue is sustainable under subdivision 23 of Art. 1995, V.A.C.S. as to Express.

■ Venue facts necessary to sustain venue under subdivision 24 are (1) damage or loss of freight; (2) relation of customer and carrier; and (3) doing business in or having an agent or representative in the county. It is uncontradicted that Express

---

1. Express participated throughout the trial without objection.

and plaintiff had a relationship of customer and common carrier. It is undisputed that the meat was delivered by Express in a damaged condition. The evidence showed that Express was doing business in Nueces County. It had performed work for plaintiff in Nueces County on numerous occasions, the testimony being that it had done such business for plaintiff at least as such as once a month. See Mayhew v. McFarland, 137 Tex. 391, 153 S.W.2d 428 (1941); Wilson v. Inness, d/b/a Bob Inness Co., 336 S.W.2d 437 (Tex.Civ. App.—Texarkana 1960). Venue is also maintainable under subdivision 24 of Art. 1995, V.A.C.S. as to Express.

▆▆▆ Loop, on the other hand, contends that venue does not lie against it in Nueces County under any of the subdivisions because (1) it is undisputed that it does not do business in Nueces County; (2) that the meat that it stored was delivered directly from plaintiff in Jim Wells County to Loop in Bexar County and was never in Nueces County; (3) that it does not have an agent in Nueces County; and (4) that no cause of action could have arisen in Nueces County against Loop within the meaning of Subdivisions 9a, 23, and that subdivision 24 has no application since Loop is not a common carrier. Be that as it may, we believe that Loop as well as Alford and Express are necessary parties to plaintiff's cause of action and that subdivision 29a is applicable as to Loop and Express. Subdivision 29a states "Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Art. 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

In determining who is a necessary party, the Supreme Court suggested that the test to be applied in determining this question is whether the plaintiff can obtain complete relief sought in his suit without joinder of such party. Clingingsmith v. Bond, 150 Tex. 419, 241 S.W.2d 616 (Tex.Sup.

1951). In Zable v. Huff (supra), the Court said:

"It is well settled that a 'necessary party' as used in Subdivision 29a is one whose joinder is necessary in order to afford the plaintiff the full relief to which he is entitled in the suit which can be so maintained in that county. Ladner v. Reliance Corporation [156 Tex. 158, 293 S.W.2d 758]; Shaw v. Allied Finance Company [161 Tex. 88, 337 S.W.2d 107]."

The bailments to Loop and Alford are uncontradicted. The 600 boxes of meat were jointly delivered by Alford and Loop to Express. The proof showed that the damaged boxed meat could not be identified as coming from either Loop or Alford. It was Alford's, Loop's and Express's responsibility to keep all of the meat at 0 degrees or below. This was not done as to some of the meat. Plaintiff seeks a joint judgment against Alford, Loop and Express. The case was tried without objection by any of the defendants on this theory. No objection to the pleadings were had by any of the defendants. See Rule 67 Texas Rules of Civil Procedure. Plaintiff cannot have full satisfaction unless all defendants are joined in this action. Commonwealth Bank & Trust Co. v. Heid Bros., 122 Tex. 56, 52 S.W.2d 74 (1932). If complete relief is to be afforded plaintiff, it is entitled to have not only Alford but Loop, as well as Express, parties defendant in its suit in Nueces County. Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774 (1944). 1 McDonald Sec. 4.36, p. 547–548; Miller & Miller Auctioneers, Inc. v. Hillcrest State Bank, 430 S.W.2d 61 (Tex.Civ.App.—Dallas 1968).

Loop contends that plaintiff made a fatal error in its controverting affidavit by making reference to its "original petition" instead of its "amended original petition." This, Loop contends, defeats plaintiff's right to sustain venue in Nueces County. Plaintiff originally sued Alford and Express. They each filed their pleas of privi-

lege and plaintiff thereafter controverted the pleas. Eight months later plaintiff filed its first amended original petition alleging a joint liability against not only Alford and Express, but also Loop. It was then that Loop filed its plea of privilege and plaintiff thereafter timely controverted the same in which it stated in part:

"II

Plaintiff heretofore filed herein its original petition wherein a certain cause of action by said Plaintiff hereto was alleged against the Defendant, Loop Cold Storage Co., the allegations in the *original petition* being true and correct. Plaintiff, for the purpose of this controverting affidavit, refers to such *original petition* on file herein and adopts the allegations therein contained in haec verba, the same as though fully written and copied herein, in support of this controverting plea." (Emphasis supplied.)

Following this, the plaintiff set forth the various exceptions to the venue statute and prayed that defendant Loop's plea of privilege be overruled.

Loop contends that it was not a party to the "original petition" referred to in the controverting plea and was not a party until brought in by plaintiff's "amended original petition". It argues that the facts alleged in the "original petition" could not serve as a basis for controverting its plea of privilege. We disagree.

First, Loop failed to call to the court's attention the defect in appellee's controverting plea; second, Loop went to trial on "Plaintiff's first amended original petition" without objection to any of the evidence presented; and third, plaintiff's amended petition was actually its "original petition" since by amendment it did away with the first petition. Rule 65, T.R.C.P.; Burnett v. Cory Corp., 352 S.W.2d 502 (Tex.Civ. App.—Dallas 1962, n. r. e.).

In Wilson v. Inness, 336 S.W.2d 437, the appellant contended that the failure of the plaintiff to plead the requisite venue facts, defeated the plea of the party relying upon the exception. Citing Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91. However, the Court stated:

". . . his argument does not take into account the absence of any exception by him directed to the insufficiency of the controverting affidavit. Had proper exception to such pleading been made his position would be tenable. The record presented requires the application of the following rule—the failure to except to defects in the controverting plea before judgment is rendered waives the defects . . . ." Citing Rule 90, T.R. C.P. and numerous authorities.

" 'Moreover, under Rule 67, the venue issues may be tried outside the formal written pleadings by express or implied consent.' " Citing numerous authorities.

Here defendant Loop participated completely throughout the trial. Its deposition and/or request for admissions were admitted into evidence without objection. Its attorneys cross examined all of the witnesses, heard the depositions, request for admissions of the other defendants and other evidence without raising any objection. Plaintiff's referral to its original petition instead of its first amended original petition was a defect in its pleading. Its reference to its cause of action against Loop in its "original petition" instead of its "amended original petition" was an oversight since Loop was not a defendant until the filing of the "amended original petition". If Loop was to complain, Loop was required to especially point out by motion or exception and have the same brought to the attention of the trial judge as required by Rule 90, T.R.C.P. His failure to do so amounts to a waiver of such defect. Venue issues are constituent fact issues which may be tried outside the formal written pleadings by express or implied consent. Atlantic Mutual Insurance Co. v. Farmers Cooperative Asso., 466 S.W.2d 419 (Tex.Civ.App.—Dallas 1971);

Great Southwest Life Ins. Co., v. Camp, 464 S.W.2d 702 (Tex.Civ.App.—Ft. Worth 1971). Rule 67 T.R.C.P.

The order of the trial court overruling the pleas of privilege of defendants Express and Loop is affirmed.

SHARPE, Justice (concurring in part and dissenting in part).

I concur in that portion of the judgment of this Court affirming that of the trial court which overruled the plea of privilege filed by Frozen Food Express, Inc. In my view, venue can be properly sustained in Nueces County, Texas, against that appellant-defendant under Subdivisions 23 and 24, Article 1995, V.A.C.S. However, I would expressly overrule appellee's contentions which assert that such venue can also be maintained as to that party under subdivisions 9a and 29a of that statute.

I respectfully dissent as to that portion of the judgment of this Court which overrules the plea of privilege filed by Loop Cold Storage Company, appellant here and defendant below. Appellee has agreed that subdivisions 9a, 23 and 24 of Article 1995, V.A.C.S., are not applicable to appellant Loop, although they were originally relied upon by appellee in the lower court. However, appellee does rely upon subdivision 29a of the venue statute and the majority opinion holds that venue in Nueces County can be sustained against Loop under that subdivision on the basis that Loop was and is a necessary party. I disagree with that conclusion.

The evidence conclusively establishes that appellee separately delivered 128 boxes of meat to Loop in San Antonio, Bexar County, Texas. This shipment was never in Nueces County, Texas and had nothing to do with the separate shipment by appellee of 472 boxes of meat to Alford in Corpus Christi, Nueces County, Texas. When appellee sold 600 boxes of meat to Safeway Stores in Little Rock, Arkansas, it instructed Frozen Food Express, Inc., to pick up 472 boxes of meat from Alford in Nueces County, Texas and to thereafter pick up 128 boxes of meat from Loop in Bexar County, Texas for transportation to destination at Little Rock, Arkansas. There is no connection at all with the meat stored with Loop in Bexar County, Texas and the rest of the shipment except that it was loaded on the same truck; which fact is not determinative of the venue issue here. Alford and Loop conducted completely separate operations in processing and storing the meat separately delivered to them, and they did not act jointly in any respect.

The only relief sought by appellee against Loop was a money judgment. There is no reason shown by the record which would prevent appellee from securing the complete relief to which it might be entitled as against Alford and Frozen Food Express, Inc., in Nueces County without the joinder of Loop. In my view, Loop was not a necessary party to the Nueces County suit within the meaning of subdivision 29a of Article 1995, V.A.C.S. See: Ladner v. Reliance Corporation, 156 Tex. 158, 293 S.W.2d 758 (1956); Western Steel Company v. Hayek, 452 S.W.2d 732 (Tex.CivApp., Corpus Christi, 1970, n. w. h.); Hermes Grain Company v. Hailey, 435 S.W.2d 181 (Tex.Civ.App., Corpus Christi, 1968, n. w. h.); Dina Pak Corporation v. May Aluminum, Inc., 417 S.W.2d 419 (Tex.Civ.App., Corpus Christi, 1967, n. w. h.); Weaver v. Acme Finance Company, 407 S.W.2d 227 (Tex.Civ.App., Corpus Christi, 1966, n. w. h.).

I would reverse the judgment of the trial court as to appellant Loop Cold Storage Company, order that its plea of privilege be sustained and venue as to it be transferred to Bexar County, Texas.