Edward Earl BENTON, Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 17701.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Aug. 14, 1980.

Jefferson, Wallis & Sherman, Michael Maness, Houston, for appellant.

Edward Cazares, W. Torrance Fiddes, Jr., Asst. City Attys., Houston, for appellee.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

COLEMAN, Chief Justice.

This is an appeal by Edward Earl Benton from an order temporarily enjoining him, his agents, his employees, assigns, successors and any and all persons holding under his from further maintaining, using, operating, controlling renting, leasing, or occupying a building, or part of a building, located at 1419 South Loop West, Houston, Harris

County, Texas, for the purposes of prostitution, promotion of prostitution or aggravated promotion of prostitution. The order will be reformed, and as reformed will be affirmed.

The City alleged that the building located on the premises described, commonly known as the Crystal Pistol, was habitually maintained by appellant and others as a house of prostitution. The City of Houston and its City Attorney, as plaintiffs, alleged that they believed that prostitutes were permitted to resort to and reside in and on said premises for the purpose of plying their vocation, and that said premises and building of the defendants was actually and habitually used by prostitutes for the purpose of prostitution, and that the defendants were managing, maintaining and allowing the house of prostitution to be maintained and the promotion of prostitution to go on and are interested in the same and in the maintenance and promotion of such activity. The plaintiffs assert that the premises known as the Crystal Pistol is a public nuisance as defined by Article 4667, V.A.C.S., and prayed for a temporary injunction and on final hearing a permanent injunction.

The appeals in five separate cases in which the City of Houston and its City Attorney have been granted temporary injunctions by the 113th District Court of Harris County, Texas, against Edward Earl Benton, and others, on substantially the same pleading and similar evidence were consolidated for some appellate purposes. Separate transcripts and statements of facts have been filed in each case, but the court has permitted the parties to file one brief for use in all cases, and as a basis for the oral argument in all cases.

■ Courts of equity, as such, have no jurisdiction to entertain suits to enjoin the commission of acts merely because such acts constitute crimes or penal offenses under penal laws. "When the State, through its proper officers, invokes the jurisdiction of a court of equity to abate a nuisance, it must be shown either that the action is directly authorized by some constitutional or statutory law, or that such nuisance is an injury to the property or civil rights of the public at large . . . ." Ex Parte Hughes, 133 Tex. 505, 129 S.W.2d 270, 274 (1939).

Article 4667, V.A.C.S. provides in pertinent part:

(a) the habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:

(2) For the promotion or aggravated promotion of prostitution, or compelling prostitution . . .

(b) Any person who may use or be about to use, or who may be a party to the use of any such premises for any purpose mentioned in this Article may be made a party defendant in such suit. The Attorney General or any District or County Attorney or City Attorney may bring and prosecute all suits that either may deem necessary to enjoin such uses, and need not verify the petition . . .

■ The appellant contends that the trial court erred in enjoining him from "further maintaining, using . . . the hereinabove described premises . . . for the purposes of prostitution" because Article 4667, supra, only authorizes an injunction against "promotion or aggravated promotion of prostitution". Prior to the amendments to Article 4667, adopted in 1973 and in 1975, the habitual use of a building or part thereof for keeping, being interested in, aiding or abetting the keeping of a bawdy or disorderly house, as those terms were defined in the penal code, could be enjoined at the suit of any citizen of this State. The amendments to Article 4667 have eliminated the authority of a citizen to enjoin the keeping of a bawdy or disorderly house. Article 4664, V.A.C.S., provides that any place to which persons habitually resort for the purpose of prostitution as prohibited by the penal code is declared to be a common nuisance. Article 4666, V.A.C.S., authorizes the Attorney General, or the District or County Attorney, to file suit in the name of the state in the county where the nuisance

is alleged to exist to abate and enjoin the same. The City Attorney of the City of Houston is not authorized to file suit to enjoin a common nuisance as defined in Article 4664, supra.

 The only authorization for this suit to be brought by the City Attorney and the City of Houston is found in Article 4667, supra. Where an action to enjoin a nuisance is brought under statutory authority, the case is limited to the provisions of the statute. The only activities which may be enjoined are those which fall within the provisions of the statute upon which the application for injunction is based. *State ex rel. Shook v. All Texas Racing Ass'n*, 128 Tex. 384, 97 S.W.2d 669 (1936). A person commits the offense of promotion of prostitution if he knowingly receives money pursuant to an agreement to participate in the proceeds of prostitution, § 43.03, Vernons Texas Penal Code Ann. There is evidence from which the trial court could conclude that the owners of the Crystal Pistol were guilty of such an offense. Mr. Benton testified that the girls employed as entertainers were compensated by a percentage of their drink sales. The reports reflect that when the undercover officers entered the Crystal Pistol and sat down at a table they would be served a drink, the price of which was included in their entrance fee. A girl would then come and sit in the officer's lap and ask him to buy her a drink. The priced asked for the drinks ranged from $16.00 to $200.00. The higher priced drinks included a visit to a "party table" in the back of the establishment. The girls promised a "good time" at the party tables and explained that a "good time" included sexual relations. There is evidence from which inferences could be drawn that the drink money was deposited in the cash register and that the owners of the Crystal Pistol participated in the proceeds of prostitution. There is no evidence that Benton participated in the proceeds in any manner.

 The trial court's injunction might also be sustained, at least in part, if there is evidence which tends to show that Mr. Benton supervises or manages a prostitution enterprise that uses two or more prostitutes. Section 43.04, supra. There is ample evidence from which an inference could be drawn that the Crystal Pistol is a prostitution enterprise that uses two or more prostitutes. There is also evidence to support a finding that Edward Earl Benton knowingly controlled or supervised this enterprise.

On October 22, 1979, Mr. Benton testified in the United States District Court that he was the general manager of Edalco, Inc. He was general manager for the Flamingo Strip, Tender Trap, Peppermint Palace, Crystal Pistol, Airport Strip No. 2, Valentine Strip, Blue Velvet and Giesha Palace, "if we rebuild it after the fire". He had held this position for thirteen months. He testified that he ran a business and that it required his personal supervision for about twenty hours a day, six days a week. He testified he was familiar with the practice of the Houston Police Department Vice Division of seizing money from the cash registers of various adult clubs including Edalco, Inc. clubs. There is evidence that when vice officers entered one of the clubs to make an investigation they paid a fee for entrance and for drinks. When arrests were made as a result of these investigations the officers required the bartender to return the money which the officers had spent. The suit in Federal Court was filed to recover this money from the Houston Police Department. Mr. Benton identified certain daily sheets where the bartender was explaining a shortage of money by saying that the vice officer took that amount. He testified that he told the bartenders in the clubs that it was not the company policy to give money back. However, he explained, the bartenders were not expected to fight one or more Houston police officers in the event they insisted on taking the money back. He testified that once a dancer had sold a drink to an undercover police officer and the money gets to the cash register she would be paid her commission even though the money is taken back by the officer following an arrest "unless it was what I considered a rightful prostitution bust".

■ The admissions or declarations of a party litigant against his interest are admissible though made by him when testifying as a witness at a former trial. *Lillie Sales, Inc., v. Rieger*, 437 S.W.2d 872, 874 (Tex.Civ.App.–Texarkana 1969, writ ref.n.r. e.); *Padilla v. T.E.I.A.*, 343 S.W.2d 473, 474 (Tex.Civ.App.–San Antonio 1961, writ ref.n. r.e.).

■ It has been held that a conviction on a charge that the defendant did unlawfully "keep, and was then and there concerned in keeping, and did then and there aid and assist and abet in keeping, a bawdy house" could be sustained despite the fact that the State failed to show that the defendant was actually present at a motel at the times and on the occasions when the acts of prostitution occurred. *Green v. State*, 320 S.W.2d 818 (Tex.Cr.App.–1958). Once it is shown that the premises in question were placed in the charge of Mr. Benton individually, it is presumed that such status continued to exist until the contrary is shown. *Philadelphia Trust Co. v. Johnson*, 257 S.W. 280 (Tex.Civ.App.–Beaumont 1923, writ dism'd). Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it also existed at a subsequent time. *Mayhew v. McFarland*, 137 Tex. 391, 153 S.W.2d 428, 431 (1941). This case was filed October 1, 1979, and the order granting the temporary injunction was signed on March 6, 1980. The trial court properly determined that Edward Earl Benton controlled and supervised the Crystal Pistol on the pertinent dates.

■ The only activities which may be enjoined are those which fall within the provisions of the statute upon which the application for injunction is based. *State ex rel. Shook v. All Texas Racing Ass'n*, supra; *Soto v. State*, 171 S.W. 279, 281 (Tex.Civ.App.–El Paso 1914, no writ). Article 4667(b), V.A.C.S., provides that any person who may be a party to the use of the premises for the purposes mentioned in paragraph (a)(2) in this Article may be made a party defendant in a suit to enjoin those uses as a public nuisance. Only Mr.

Benton has appealed. There is evidence that he is a party to the use of the premises on which the Crystal Pistol is located for the promotion of prostitution and for the aggravated promotion of prostitution. Our review of an order granting a temporary injunction is strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting the order. *Davis v. Huey*, 571 S.W.2d 859, 861–862 (Tex.1978). The applicant for an injunction need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. *Transport Company of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The evidence must, at the very least, tend to support a right of recovery. *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex.1961).

■ In an injunction case where the acts sought to be enjoined are acts which prima facie constitute the violation of a statute of the State, the status quo to be preserved could never be a condition where the respondent would be permitted to continue the acts constituting that violation. The status quo to be preserved by the temporary injunction is the condition existing prior to the violation which would be the last actual, peaceable, non–controverted status which preceded the pending controversy. *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768 (Tex.Civ.App.–Houston [1st Dist.] 1970, no writ).

The trial court erred in enjoining Edward Earl Benton from further maintaining, using, operating, controlling, renting, leasing, or occupying the hereinabove described premises or any part thereof for the purposes of prostitution. The order will be reformed as to Edward Earl Benton to enjoin him from further maintaining, using, operating, controlling, renting, leasing or occupying the premises known as the Crystal Pistol, located at 3419 South Loop West, Houston, Harris County, Texas, for the promotion of prostitution or aggravated promotion of prostitution as those terms are defined in the penal code of the State of Texas. The order as reformed is affirmed.