Coös,
Jan. 5, 1937.

JOHN GAUDETTE, *Adm'r v.* JOSEPH McLAUGHLIN.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Langdell* orally), for the plaintiff.

*Irving A. Hinkley* and *William Lehnert (Mr. Hinkley* orally), for the defendant.

WOODBURY, J.   The decedent was the plaintiff's minor son who was eight years and eight months old at the time of his death.   The defendant was the holder of a contract with the school board of Groveton under which he transported children between their homes and the school for "so much to do the job."

On September 26, 1933, the defendant, in the performance of his contract, picked up the decedent and about twelve other children at the schoolhouse at the end of the day's session for the purpose of delivering them at or near their homes.   His first stop on that trip was on the right hand or easterly side of the Daniel Webster Highway, a main travelled state road, opposite the plaintiff's house which was on the westerly side of that road.   The decedent and his younger sister there alighted, the sister first.   She proceeded in safety across the highway into her own dooryard.   The decedent, in attempting to do likewise, stepped from behind the bus into the path of a southbound automobile which struck and killed him.

The bus which the defendant used in the performance of his contract consisted of a truck chassis upon which was mounted a fully enclosed wooden body with a single door in the rear.   This body was entirely separate from the cab in which the driver sat.   There was no means of direct communication between the two, although there was a fixed window, twenty inches long by eleven and one-half inches high, in the back of the cab through which the driver, by turning his head, could see his passengers.   The door in the rear was not controllable from the driver's seat.

The seats in the main body of the bus ran along and parallel with its sides, which formed their backs, so that the passengers rode in two rows facing one another. In each side of the bus there was a window, twenty-nine inches long by nine and one-half inches high, the bottom of which was two and one-half or three feet above the floor.

The evidence is conflicting as to the position of the bus on the highway when the defendant stopped it to permit the decedent and his sister to alight. The defendant testified that "the wheels on the right hand side of the bus was out on the gravel, off the tarvia." Other witnesses placed those wheels on the edge of the tarvia pavement, while still another testified: "The front end was out just on the gravel. I should say the back end was between two and one half or three feet from the gravel."

The conduct of the defendant immediately preceding the fatality may be briefly summarized as follows. After stopping his bus as above described he looked ahead as far as he could see, which was a distance of about five hundred feet. Seeing no traffic approaching from that direction, he looked back through the window in the rear of the cab and watched the Gaudette children alight. He saw the decedent's sister run across the road and then he looked foward again preparatory to starting his bus. As he did so he saw an automobile approaching. It was then, according to his estimate, from fifty to seventy-five feet away, and proceeding at fifty or sixty miles an hour. In two or three seconds, also according to the defendant's estimate, and before he had time to act, this car struck the decedent and caused the injuries from which he later died.

I. The plaintiff's nonsuit was suffered on the issues of the unsuitableness of the vehicle and on the unsafe manner and place in which the defendant stopped it. The issue of the defendant's failure to exercise due care in discharging the decedent from his bus was submitted to the jury.

The plaintiff's first complaint is directed at the procedure adopted by the court in granting the defendant's motion for a nonsuit as to two issues raised by the pleadings and denying it as to the third; his contention being that issues cannot be withdrawn from the jury until the close of all the evidence.

The test of the validity of the procedure adopted in the court below is not whether it was usual and regular (*Morin* v. *Insurance Co.*, 85 N. H. 471), but whether it was convenient, expedient and economical, and this is a question of fact to be determined at the trial. *Gurnsey* v. *Keene*, 68 N. H. 243. The procedure here adopted

appears clearly to conform to the above requirements, and certainly it is not out of line with our established rule that nonsuits may even be granted at the close of the plaintiff's opening statement. *Hughes* v. *Railroad*, 71 N. H. 279. This practice of nonsuiting upon issues not supported by the plaintiff's evidence has long been in use in this state. *Lane* v. *Hill*, 68 N. H. 275, 278, and cases cited.

The plaintiff's argument to the effect that because of the ruling of the court he was prevented, during his cross-examination of the defendant's witnesses, from eliciting testimony on the issues upon which he had been nonsuited is without merit. In the first place, the defendant was under no obligation to submit any witnesses to the plaintiff for his cross-examination. The defendant could have elected to rest his case when the plaintiff did and stand upon his motion for nonsuit. *Fletcher* v. *Thompson*, 55 N. H. 308. Having elected to proceed with the case and introduce evidence in his own behalf the defendant ran the risk of supplying the fatal deficiencies in the plaintiff's proof, thereby giving the latter the right to go to the jury (*Lane* v. *Manchester Mills*, 75 N. H. 102, 106; *Burnham* v. *Railroad*, 69 N. H. 280 and cases cited), but it does not follow that this election gave the plaintiff an additional opportunity to supply testimony upon issues theretofore untouched by the evidence, through the cross-examination of the defendant's witnesses. Orderly procedure still requires that a plaintiff make out a *prima facie* case before the defendant is obligated to produce any evidence. The rule of *Burnham* v. *Railroad, supra,* is a modification of that rule only in so far as modification of it is required by the realities of the situation presented when, after an erroneous denial of a motion for nonsuit, a defendant supplies the deficiency in the plaintiff's evidence without which his case would fail for lack of evidentiary support.

Furthermore, had the opportunity presented itself for the plaintiff to supply the fatal lack of evidence in support of his case during his cross-examination of the defendant's witnesses, he could have asked the court to reconsider his ruling on the motion for nonsuit and to be allowed to introduce further evidence in chief in support of his case. *Stone* v. *Boscawen Mills*, 71 N. H. 288, and cases cited. The procedure adopted gives the plaintiff adequate protection.

The defendant's motion, however, was improvidently granted.

The bus was so constructed that its driver had no means of direct control over the passengers. He could see them through the window in the back of the cab, and signal to them through it; he could also

make his voice heard by them over the noise of his motor, but he could not control the time of their descent, nor, after their descent, were they near enough to him to permit of ready transmission to them of oral directions or warnings. The windows in the sides of the bus were fixed and passengers inside could obtain through them no adequate view of traffic approaching over the highway. The window in the back of the cab was so obstructed by the shoulder of the driver, and by that of his wife who was riding with him as a passenger on the front seat, that only its middle third was available to his passengers for a view ahead, and this area was further limited by the head of the driver when he turned to watch his passengers alight.

In the face of these facts the defendant stopped in front of the decedent's home on the opposite side of a main traveled highway and findably to some extent diagonally with it. He did not get down from his seat to directly superintend the time and manner of the decedent's exit from the bus, and, on the evidence, the jury could have found that he did not maintain a sufficient look-out for the decedent's safety.

The court correctly charged that "The defendant's duty is performed if his passenger alights in a place of safety," but the suitability of the place where the decedent got down must depend upon the position of the bus upon the highway and upon the opportunity which the decedent had to see approaching traffic just prior to his descent. The position of the bus upon the highway might be conclusively considered safe had the bus been so constructed that a clear view could be had from within it, or had the defendant directly superintended the alighting of his passengers. Similarly its construction might be conclusively considered all that due care required if the defendant had stopped on the same side of the road as that upon which the decedent's home was located.

Neither of these issues can be passed upon without reference to the other, nor can either of them be considered without reference to the issue submitted. It follows that the jury should have been permitted to consider the construction of the bus and its position upon the highway when passing upon the question of the defendant's care.

II. The plaintiff's exception to the failure of the court to charge that "a carrier of passengers is bound to exercise the highest degree of care and diligence," is without merit. Even a common carrier is not held to such a high standard (*Kambour* v. *Railroad*, 77 N. H. 33, 50) and the defendant here was only a private carrier. *Dover &c. Ry. Co.* v. *Wentworth*, 84 N. H. 258. As such, ordinary care under

all the circumstances was all that was required of him.  *Faucher* v. *Wilson*, 68 N. H. 338, 339.

III. The plaintiff's exception to the failure of the court to charge on the doctrine of the last clear chance is not well taken.  The last time the defendant saw the decedent prior to the accident was when he alighted from the bus.  There was then nothing to indicate that he was about to precipitate himself negligently into the path of on-coming traffic.  He was not obviously inattentive, or seen by the defendant to be negligently approaching a danger of which he was not aware.  *Gahagan* v. *Railroad*, 70 N. H. 441.  Possibly the de-fendant should have anticipated that the decedent, due to his youth, might be negligent when he attempted to cross the road, but he had no actual knowledge that such was going to be the fact.  This lack of actual knowledge on the part of the defendant renders the doctrine of the last clear chance inapplicable.  *Clark* v. *Railroad*, 87 N. H. 36.

Furthermore, although the defendant's estimates of time, speed and distance are obviously self-contradictory, the maximum time, under any view of this evidence, in which he had to act was three seconds.  In that length of time it might be theoretically possible for the defendant to appreciate the need for warning, to give some signal to the oncoming car and for the driver of that car to see the warning, appreciate its significance and apply his brakes.  But the last chance must be a clear one (*Clark* v. *Railroad*, *supra*, 38 and cases cited), and it cannot be said that three seconds gave a clear oppor-tunity for saving action.  This is particularly true when it is con-sidered that one of the circumstances in the light of which the de-fendant was called upon to act was the emergency created by the negligent conduct of the driver of the car which actually struck the decedent.

The plaintiff further excepted to the charge on the ground that the court failed to state the standard of care required of minors in accordance with the principles established in the recent well considered opinion in *Charbonneau* v. *MacRury*, 84 N. H. 501.  While a meticu-lous grammatical analysis of the words used lends some support to this contention, the charge, considered as a whole, leads to the belief that the jury did not fail to understand the law correctly.

The other exceptions taken by the plaintiff are not likely to arise at the next trial and so do not require consideration.

*New trial.*

PAGE, J., was absent: the others concurred.