# Ferris Bridge v. Woodstock Union High School District

[ 255 A.2d 683 ]

April Term, 1969

Present: Holden, C.J., Shangraw, Barney, Keyser, JJ., and Daley, C. Supr. J.

Opinion Filed June 20, 1969

*Ryan, Smith & Carbine* for the Plaintiff.

*French & Miller* for the Defendant.

**Barney, J.** A skidding motorcycle, out of control, passing a stopped school bus on the wrong side, struck Valerie Bridge just after she stepped off the bus. The accident took place in the yard of a restaurant where Valerie, a high school junior and very close to sixteen, was employed. She was on her way to work after school at the time. Valerie was painfully hurt, breaking both bones of her right leg, as well as suffering additional cuts and bruises. Although she only missed a week of school, returning on crutches, she was unable to return to any regular work for more than six months.

This suit, however, is not one seeking recovery for Valerie's injuries, but is a suit brought by her father to recover for his loss of her services and her loss of wages, as well as for the medical and other associated expenses he incurred through her injury. His complaint is directed only against the union high school district, claiming that negligence on the part of the driver concurred with that of the motorcyclist in causing the accident. On trial, the lower court ruled, at the close of the plaintiff's case, that the evidence, as a matter of law, had so far failed to establish negligence as to prevent a submission of the issue to the jury. The plaintiff has appealed the direction of a verdict against him to this Court.

When a directed verdict is reviewed, the evidence must be viewed in the aspect most favorable to the plaintiff, without regard for modifying evidence. *Berry* v. *Whitney,* 125 Vt. 383, 385, 217 A.2d 41. Taken in that light, the question then is whether the evidence established negligence on the part of the defendant, through its bus driver, sufficient to require submission of the question to the jury. *Rivard* v. *Roy,* 124 Vt. 32, 37, 196 A.2d 497. Any such negligence, moreover, to have application on this issue, must form some part of the proximate cause of the accident. *Eastman* v. *Williams,* 124 Vt. 445, 449, 207 A.2d 146.

The plaintiff claims that the driver of the school bus was negligent in overseeing Valerie's exit from the bus. Two alleged shortcomings are put forward. The first is that the driver failed to keep a proper lookout on Valerie's behalf, and the second is that it was a breach of duty for the driver to indicate to Valerie that she should "hurry."

The duty owed by the driver to Valerie was one of due care under the circumstances. *McKirryher* v. *Yager,* 112 Vt. 336, 343, 24 A.2d 331.

From the point of view of logical analysis there is little difference between classifying this duty as one involving a high standard of care since it deals with school children, and classifying the standard of care as unchanging, but noting that the circumstances involve children. There may be forensic advantages in contrasting "high" and "ordinary" care, or vice versa, but, in the last analysis, it all comes down to the fact that the driver of a school bus must take into account the age, situation and disposition of his juvenile passengers, and act accordingly for their protection. The question in this

case is, did he do so with respect to Valerie? *Lafaso* v. *Lafaso,* 126 Vt. 90, 96, 223 A.2d 814.

The events began when Valerie boarded the first of two school buses leaving the high school at about the same time, headed east on U.S. Route 4 for the village of Woodstock. On the way, to their right, these two buses would pass the restaurant where Valerie worked. This restaurant was something less than a mile from the school, and situated about 800 feet down a straight stretch of road after a curve, as it was approached from the high school.

The testimony of the various witnesses relating to the accident is remarkably consistent. Two motorcyclists, passing at 40-50 m.p.h. the second or trailing school bus after it had entered upon the straight-away leading past the restaurant, were confronted by the stopped school bus ahead of them discharging Valerie. One motorcycle, operated by a boy named White, had gone on to also pass the other motorcycle, operated by a boy named Eaton, before he discovered his predicament. The White motorcycle, unable to stop for the bus, skidded into the restaurant yard and slid the length of the right-hand side of the bus striking Valerie. Defective brakes contributed to his loss of control. The Eaton boy also swung into the restaurant yard, but was able to stop some twelve feet from Valerie's bus. Eaton testified, as did all of the witnesses in a position to see, that the stopped bus had its red warning lights flashing. It was Eaton's testimony that about four or five seconds elapsed from the time the two motorcycles passed the second school bus until the White motorcycle hit Valerie.

The driver of the second bus gave very similar evidence. He placed the school buses about two hundred to two hundred and fifty feet apart when Valerie was hit, and about six hundred feet apart when the motorcycles moved in front of him. He said Valerie was about five feet from the side of the bus when hit, and confirmed that the lights were flashing.

Valerie understood from the driver that she was to get off the bus promptly, and testified that she hurried. As the bus came to a stop she got up and stood beside the driver. When the door opened she thanked the driver and went down the three steps to the ground, waving to her friends. She took a couple of steps away from the bus and saw the White motorcycle coming toward her from about a bus-length beyond the rear of the bus. The sight caused her to "freeze" and then she was hit. She estimated that about four seconds elapsed from

the time the bus stopped to the time she was hit, and that two or three of these seconds passed after she went through the door of the bus.

The bus driver said that he checked his rear-vision mirror in preparation for his stop to let Valerie off. At that time the second bus was just rounding the curve onto the straight stretch and no motorcycles were in sight. He then gave his attention to opening the door and watching Valerie off the bus into the yard. His bus was either partially in the restaurant yard or near the edge so that Valerie got off into the yard. He was shutting the door and checking traffic when he saw Valerie's books fly and a motorcycle slide around in front of the bus. Traffic behind him and coming the other way on Route 4 had stopped for his signals. He immediately left the bus and went to Valerie's assistance.

Measurements were taken at the scene confirming the testimony that Valerie was between five and six feet from the right side of the bus when she was hit. Measurements also indicated that the motorcycle that hit Valerie was off the right-hand side of the highway about fifty-nine feet back of the point where Valerie was hit and about forty-five feet back of the rear of the bus. Examination confirmed the fact that the brakes on the White motorcycle were defective.

It was argued by the plaintiff that there was a period when the two buses were going along Route 4 with the motorcycles between them, and that, on that account, the driver of Valerie's bus should have seen them and taken precautions to avoid discharging Valerie in their possible path. There is no testimony which bears out this theory. It is clear that the motorcycles did travel between the buses, but after the first bus had stopped to let Valerie out. If the testimony as to timing given by both Valerie and the motorcyclist Eaton is to be accepted, the motorcycles must have come around the second bus and passed between the two into the yard of the restaurant while Valerie was in the act of leaving the bus under the eyes of the driver.

■ There was no evidence of any warning or notice to the driver which would serve to notify him that circumstances behind him changed after he stopped. His duty to Valerie included watching her leave the bus as he manipulated the door, so there can be no imputation of inattention. The matter developed with such swiftness that apparently, no observer had an opportunity to give any warning signal whatever.

A glance backward in the appropriate second or two to see the motorcycles behind would have been only fortuitous and, even had it occurred, the evidence strongly suggests that the accident was at that time already unavoidable. The court's conclusion that no conduct justifying the imputation of negligence on the part of the bus driver has adequate legal foundation.

· The directive, implicit or express, to hurry off the bus is also alleged to have contributed to the accident. The facts, as have been noted, indicate that Valerie's unhappy meeting with the motorcycles depended upon activities precise almost to the second. It could as easily be claimed that a second-saving additional hurry would also have avoided the mishap. To claim that foresight should have indicated that a prompt departure from the bus threatened harm is arguing hindsight, not . foresight. The driver's proper concern for the passengers on his bus and on the following bus in their exposed position stopped on busy Route 4 justifies injunctions intended to have his passengers disembark promptly. Only if his comment induced or directed Valerie to step out into a position of danger, either known or reasonably to be anticipated under the circumstances as they appeared to the driver, can an allegation of negligence be supported. As we have seen, the facts gave no such intimation of danger.

*Judgment affirmed.*