NO. 12-02-00126-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


BRENDA HARDIN, JAMES FRANK 

GILBERT INDIVIDUALLY AND §
 APPEAL FROM THE 

PALESTINE INDEPENDENT

SCHOOL DISTRICT,

APPELLANTS


V.
§
 COUNTY COURT AT LAW OF



CHARLES AVERY DYKES, AND 

YVONNE DYKES AS NEXT FRIEND §
 ANDERSON COUNTY, TEXAS

OF JENNIFER DYKES, A MINOR

APPELLEES






 James Frank Gilbert and Palestine Independent School District ("PISD") appeal from the trial
court's denial of their immunity-based motion for summary judgment in this personal injury suit
filed by Charles Avery Dykes and Yvonne Dykes, as next friend to Jennifer Dykes, a minor. In their
sole issue, Appellants assert the trial court erred in denying their motion for summary judgment. We
reverse and render.


Background

 Eleven-year-old Jennifer Dykes was hit by a minivan as she crossed the street on her way
home. She had just gotten off a PISD bus driven by Gilbert. Her parents sued PISD, Gilbert, and
Brenda Hardin, the driver of the minivan, for personal injuries. The Dykes asserted in their petition
that Appellants are liable under the Texas Tort Claims Act because Jennifer's injuries were caused
by the negligent use and operation of motor driven equipment. Appellants filed a motion for
summary judgment asserting sovereign and official immunity which the trial court denied. This
interlocutory appeal followed.


Official immunity

 In their issue on appeal, Appellants contend the trial court erred in denying their motion for
summary judgment. They assert that they proved that Gilbert is entitled to the affirmative defense
of official immunity. They argue that, at the time of the accident, Gilbert, who was acting in the
course and scope of his employment, was performing a discretionary function and acted in good
faith. Rejecting the Dykes' assertion of the importance of whether the flashing lights were activated
prior to the stop, Appellants insist that the relevant inquiry is how long Gilbert should have waited
after Jennifer exited the bus before proceeding. They contend that the determination of how long
to wait for students to disembark from the bus and whether they are safely away from the bus before
the driver proceeds requires the driver's independent deliberation, as there is no mandatory policy. 
Thus, they argue, Gilbert established his right to official immunity and, they further argue, it follows
that PISD retains its sovereign immunity. 


Standard of Review

 To obtain a summary judgment, the movant has the burden of showing that there is no
genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true. Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor
of the non-movant and any doubts resolved in its favor. Id. Summary judgment for a defendant is
proper when the summary judgment evidence negates an essential element of the plaintiff's cause
of action as a matter of law or conclusively establishes all elements of an affirmative defense as a
matter of law. See Black v. Victoria Lloyds Ins. Co, 797 S.W.2d 20, 27 (Tex. 1990). Once the
defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts
to the non-movant to produce controverting evidence raising a fact issue as to the elements negated. 
Torres v. Western Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex. 1970); Owen Elec. Supply, Inc. v.
Brite Day Constr. Inc., 821 S.W.2d 283, 286 (Tex. App. - Houston [1st Dist.] 1991, writ denied).


Applicable Law

 Official immunity is a common law defense that protects governmental officers and
employees from personal liability. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994). Government employees are entitled to official immunity from suit arising from the
performance of their discretionary duties in good faith as long as they are acting within the scope of
their authority. Id. A function is ministerial if the law prescribes the duties to be performed with
such precision that nothing is left to the discretion of the actor. Id. at 654. If an action involves
personal deliberation, decision and judgment, it is discretionary. Id. The test for objective good
faith is whether a reasonably prudent official, under the same or similar circumstances, could have
believed that his actions were justified. City of Galveston v. Burns, 949 S.W.2d 881, 885 (Tex.
App.- Houston [14th Dist.] 1997, no writ). Good faith may be established through the testimony of
the employee if the testimony is clear, positive, direct, otherwise credible, free from contradiction
and readily controvertible. Id. To controvert the employee's summary judgment proof on good
faith, the non-movant must show that no reasonable person in the defendant's position could have
thought the facts were such that they justified the defendant's acts. Chambers, 883 S.W.2d at 657. 
The burden is on the defendant to establish all elements of the defense of official immunity. Id. at
653.

 Immunity from suit bars an action against the State unless the State expressly consents to the
suit. Texas Dep't of Trans. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). The Tort Claims Act (the
"Act") provides a limited waiver of sovereign immunity in certain circumstances. A governmental
unit is liable for personal injury proximately caused by the wrongful act or omission or the
negligence of an employee acting within his scope of employment if the personal injury arises from
the operation or use of a motor-driven vehicle or motor driven equipment and the employee would
be personally liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(1) (Vernon 1997). If the employee is protected from liability by official immunity, the
employee is not personally liable to the claimant and the government retains its sovereign immunity
under subsection one of the Act. DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995).




The Petition

 The Dykes alleged in their petition that Gilbert, while acting in the scope of his employment
with PISD, negligently operated a school bus in several different ways. They alleged he failed to
operate the bus in compliance with traffic regulations pertaining to the use of flashing lights when
discharging children, failed to operate and use warning signals in a timely fashion to indicate to
oncoming traffic that the bus was coming to a stop or had stopped, failed to make sure Jennifer
safely exited the bus and crossed the street safely, and failed to remain stopped for a sufficient
amount of time in order to make sure Jennifer crossed the street safely. They further alleged that
Gilbert was reckless and was inattentive.


Motion for Summary Judgment

 Appellants filed a motion for summary judgment asserting they are entitled to judgment as
a matter of law on two separate bases. First, they argued that because Jennifer was not hit by the
school bus, neither the bus nor Gilbert caused her injuries. Therefore, as a matter of law, Jennifer's
injuries were not caused by the operation or use of motor driven equipment owned by the State as
required to invoke the waiver provision in section 101.021(1) of the Act. Second, they asserted that
Gilbert is entitled to official immunity because at the time of the incident he was acting in good faith,
within the course and scope of his employment, and performing discretionary acts. Specifically, they
asserted that the driver's determination of how long to wait for students to disembark from the bus
and whether they are safe requires independent deliberation, thus constituting discretionary acts.

 As summary judgment evidence, Appellants presented the police incident report, Gilbert's
affidavit, the affidavit of Steve Thorn, and PISD's Transportation Bus Drivers Handbook. In the
police report, the officer stated that Ms. Hardin had stopped in obedience to the flashing red lights
on the school bus. The bus turned off the flashing red lights and began traveling south. Ms. Hardin
proceeded north and Jennifer walked across the street from behind the bus, entering the path of Ms.
Hardin's vehicle.

 In his affidavit, Gilbert explained that he has discretion to determine where it is appropriate
to stop to allow students to enter and exit the bus. He further explained that, as there is no district-wide policy mandating the amount of time he is to wait for students to enter or exit the bus, he makes
the determination of how long to wait. He bases this determination on his experience, the number
of students entering and exiting, the weather, traffic, and whether students appear to be safely away
from the street and bus. On the day of the accident, he activated his warning signals prior to
approaching the intersection of North Queen and West Lacy, where there is a four-way stop. He
stopped prior to the intersection and opened the bus doors. The flashing lights automatically turned
on when the doors opened and automatically turned off when the doors closed. Several students
exited the bus and went up into a parking lot. Once he determined the students were safely away
from the bus and street he closed the doors. He then proceeded into the intersection, turned left, and
continued on his route. He never saw Jennifer attempt to cross the street and did not see the
accident.

 Steve Thorn, Director of Transportation with PISD, explained in his affidavit that the PISD
Transportation Bus Drivers Handbook contains the policies and procedures bus drivers must follow
when operating a school bus. He stated that drivers must exercise their discretion to determine
whether students are safely away from the bus and when it is safe for them to proceed. Finally, he
stated that drivers must also use their discretion to determine whether students want to cross the
street so that the proper procedures can be followed.

 The introduction to the handbook states that "[t]he safety of the pupils being transported is
the responsibility of the driver." Under the section entitled "Special Procedures," the handbook
states that loading and unloading students requires the use of good judgment by the driver. The
handbook specifies the procedures the driver must follow when unloading students on the bus route
at their bus stops:



 Check traffic in area as the bus stop is approached.

 Activate yellow alternating flasher warning lights at least 500 feet from the bus stop.

 When applicable, turn on right turn signal indicator at least 100 feet before pulling onto the shoulder.

 For students living on the left side of roadway, have them form a single line on the right side of the
roadway approximately six to eight feet in front of the bus, or until they can make eye to eye contact
with you. Check traffic to insure that it is safe for the student to cross. Motion the students across
roadway.

 Close door and activate left turn signal if applicable.

 Check for clear traffic and children.

 Proceed when safe.



Under the section entitled "Procedures Governing the Operation of School Buses," the handbook
states that alternating red flashing warning lights are used only when loading and unloading children.


Response to Motion for Summary Judgment

 The Dykes filed a response to Appellants' motion for summary judgment in which they
asserted that there is a fact issue regarding the operation or use of the bus. Specifically, they
contended there is a fact issue as to whether the failure of the driver to activate the bus's flashing
lights or warning signals constituted negligence and was a proximate cause of Jennifer's injuries. 
The response did not address Appellants' argument that Gilbert is entitled to official immunity.

 In support of their response, the Dykes presented portions of Brenda Hardin's and Gilbert's
deposition testimony, portions of PISD's Transportation Bus Drivers Handbook, and the affidavit
of eyewitness Nioka Long. Ms. Hardin stated that the driver let the students off the bus, turned off
the lights, and proceeded to the stop sign. After the bus stopped at the stop sign, she proceeded
through the intersection. She saw Jennifer when she walked from behind the bus into the path of her
car. In the one page of Gilbert's testimony that was attached to the response, Gilbert discusses a
portion of his route, describing how one boy got off the bus and ran in front of the bus. He then
stated, "I didn't put my blinkers on or my caution lights five hundred feet because any next street is
going to be - that's going to be an intersection here. That's just like I wouldn't put any left turn
signal on because people would be confused."

 In her affidavit, Nioka Long explained that she lives across the street from the bus stop. She
was sitting on her front porch when Gilbert's bus pulled up to the bus stop. She stated that when the
bus stopped to let the children off, she did not see any flashing lights. She saw that Jennifer, her next
door neighbor, had come around from the back of the bus and began to cross the street. At the same
time, a minivan was approaching from the opposite direction of the school bus. She stated that it
appeared that the driver of the minivan paid no attention to the bus and that she drove through the
intersection without stopping at the stop sign. 

 The Dykes also presented the above-quoted section of the bus drivers' handbook outlining
procedures to be taken when unloading pupils on the bus route at their bus stop. Finally, they
presented a portion of the handbook section entitled "Operating Procedures." The pertinent
statement on that page states: "The red warning lights are not [sic] be activated until after the bus
is stopped to load/unload students. Use the flashing amber lights for a pre-warning that you are
going to stop."


Discussion

 The trial court's order denied Appellants' motion, apparently finding no merit in either of the
two grounds asserted. However, Appellants do not challenge, and we do not consider, the trial
court's determination that they did not show as a matter of law that they are entitled to sovereign
immunity based on section 101.021(1) of the Act. We consider only whether Appellant's summary
judgment evidence conclusively establishes all elements of the affirmative defense of official
immunity as a matter of law.

 The Dykes concede that, at the time of the accident, Gilbert was acting in the course and
scope of his employment. We next consider whether Gilbert's actions were ministerial or
discretionary. Clearly, a school bus driver has a duty to oversee the safety of his riders. See Mount
Pleasant Indep. Sch. Dist. v. Estate of Lindburg, 766 S.W.2d 208, 214 (Tex. 1989) (J. Cook,
concurring) ("The duty of a school bus driver continues not only until the student has safely exited
the bus, but if the student must cross the road, continues until the student has done so."). However,
"the court's focus should be on whether the [government employee] is performing a discretionary
function, not on whether the [government employee] has discretion to do an allegedly wrongful act
while discharging that function." Chambers, 883 S.W.2d at 653. 

 The summary judgment evidence shows there is no policy mandating the amount of time a
driver is to wait for students to exit the bus. The driver must look at various ever-changing factors
to determine whether students are safely away from the bus, whether students want to cross the
street, and how long to remain at the bus stop. While the district's handbook identifies procedures
to be followed while unloading students, it recognizes that implementing those procedures requires
the use of good judgment by the driver. We note also that the handbook specifies that students
wishing to cross the street are supposed to form a line in front of the bus. The handbook does not
specify what a driver is to do if a student fails to comply with that requirement. While school bus
drivers have a duty to unload students in a safe manner, they have discretion in carrying out that
duty. See id. at 655 (The supreme court rejected the contention that police officers have no
discretion to drive unsafely.). Thus, we cannot say that a PISD bus driver's duties with regard to
unloading students at a bus stop are prescribed with such precision that nothing is left to the driver's
discretion. Id. at 654. Unloading students at a bus stop involves the bus driver's personal
deliberation, decision, and judgment and is therefore a discretionary act. Id.

 We next consider if the evidence shows whether a reasonably prudent bus driver, under the
same or similar circumstances, could have believed that he was justified in closing the doors and
continuing on his route when Gilbert did. See Burns, 949 S.W.2d at 885. In his affidavit, Gilbert
stated that several students exited the bus and went up into a parking lot. No students indicated to
him that they wanted to cross the street. Once he determined the students were safely away from the
bus and street, he closed the doors, which caused the flashing lights to automatically turn off. He
then pulled away from the curb and continued on his route. Gilbert's factual recitation is otherwise
supported by the evidence. See Dovalina v. Nuno, 48 S.W.3d 279, 283 (Tex. App.-San Antonio
2001, no pet.) (Good faith can be established as a matter of law when the employee's factual
recitation is otherwise supported by the evidence.). Gilbert's testimony is clear, positive, direct,
otherwise credible, free from contradiction and readily controvertible. See Burns, 949 S.W.2d at
885. We conclude that Appellants' summary judgment evidence shows that Gilbert acted in good
faith after evaluating the situation. Accordingly, Gilbert met his burden of establishing all elements
of the defense of official immunity. See Chambers, 883 S.W.2d at 653; Black, 797 S.W.2d at 27. 
 The burden then shifted to the Dykes to present controverting evidence raising a fact issue
as to the elements of official immunity. Torres, 457 S.W.2d at 52. The Dykes' response to the
Appellants' motion for summary judgment addressed only the question of PISD's sovereign
immunity and focused on whether their cause of action involved the operation or use of the bus. 
They presented no argument on the issue of Gilbert's official immunity and offered no controverting
evidence on any element of this issue. 




Conclusion

 Because Gilbert met his burden to establish all elements of the defense of official immunity,
the trial court did err in failing to grant summary judgment in his favor. Further, because Gilbert is
not personally liable to the Dykes, PISD retains its sovereign immunity under the Act. DeWitt, 904
S.W.2d at 653. Accordingly, the trial court erred in failing to grant PISD's motion for summary
judgment. We sustain Appellants' sole issue and reverse the trial court's order denying Appellants'
motion for summary judgment. We render judgment granting the motion and dismissing the Dykes'
claims against Appellants.

 Judgment reversed and rendered.

 SAM GRIFFITH 

 Justice



Opinion delivered November 27, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, C.J., Jr., dissenting.



 I respectfully dissent. In determining whether or not the bus driver's actions at the time of
the accident were ministerial or discretionary, the school's own requirements of the driver should
be considered more closely. The Transportation Bus Drivers Handbook states to the driver that,
"You are responsible for the safety of the children on your bus and you must comply with the rules
of loading and unloading a bus." (emphasis added). There is summary judgment evidence to indicate
that the driver did not "activate yellow alternating flasher warning lights at least 500 feet from the
bus stop," did not "have [the child] form a single line on the right side of the roadway approximately
six to eight feet in front of the bus, or until [she makes] eye contact with you," did not "check traffic
to insure that it is safe for the student to cross," did not "motion the [student] across the road," did
not wait until after all of these things were done to "close door," and may not have "[activated] left
turn signal . . . ". There is some evidence to indicate that the bus driver may not have made the first
unwritten but critical step of determining where the child was going. At a trial, the jury could
consider all of the evidence to make a proper decision, but the constraints on our court require that
we consider all of the evidence favorable to the Dykes as true. See Nixon, 690 S.W.2d 546, 548-49.


 The fact that the Handbook itself states that a driver "must" do these things certainly appears
to make these requirements ministerial rather than discretionary, though there may be some
discretion involved in precisely how they are done. However, a failure to do these things would
remove the qualified sovereign immunity defense from availability through summary judgment while
leaving it for the consideration of the jury at trial.


 Even if, for purposes of argument, the foregoing requirements of the driver's handbook were
deemed discretionary, a failure to comply with them should raise a fact question under the Chambers
test as to whether or not a reasonably prudent bus driver, under the same or similar circumstances,
could have believed that the need to proceed on his route outweighed a clear risk of harm to the
public in continuing without following the procedures in the handbook. See Chambers, 883 S.W.2d
at 656. 


 It should be noted that no summary judgment evidence has been found in the record of a
student handbook, of duties imposed upon the student, or of what rules the student knew. To infer
to the student responsibilities not in the record would be improper given the requirements for our
review of the trial court's denial of a summary judgment. 


 Also pursuant to Chambers, the plaintiff must show that "no reasonable person in the
defendant's position could have thought the facts were such that they justified defendant's acts." Id.
at 647. The Texas Supreme Court recognized that this test created in Chambers "is somewhat less
likely to be resolved at the summary judgment stage than is the federal test." Id. at 657. Further, in
fulfilling our requirements under Nixon, 690 S.W.2d at 548-49, this court must take as true all
evidence favorable to the non-movant and indulge every reasonable inference in favor of the non-movant. In following the requirements of our review, this present case is one that the trial judge
properly was not able to resolve at the summary judgment stage. The finder of fact at trial would
have to sort through the evidence and make these determinations free of the restrictions on our
review.


 For these reasons, I would affirm the trial court's actions and leave these issues for a jury to
decide.





 LOUIS B. GOHMERT, JR. 

 Chief Justice













(DO NOT PUBLISH)